

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
ATTORNEY GENERAL

January 22, 1958

Honorable William J. Burke
Executive Director
State Board of Control
Austin, Texas

Opinion No. WW-345

Re: The legal effect of House
Concurrent Resolution No.
17, of the First Called
Session of the 55th Legis-
lature, 1957, purporting
to direct the Board of
Control not to accept bids
for oil and by-products
from companies engaged in
the importation of crude
oil into the United States,
and related questions.

Dear Mr. Burke:

Your request for an opinion reads in part as follows:

"I am attaching a copy of House Concurrent Reso-
lution No. 17, introduced by Representatives Latimer,
Lee and Kennard.

"The Resolution directs the Board of Control not
to accept any bids for oil, etc., from firms that import
crude oil or products into the United States or those
affiliated with such importing firms.

"The Board is also directed to study existing con-
tracts and make every effort to terminate said contracts
with oil importers if it is legally possible to do so.

"The Board of Control purchases refined products
for the use of the State and State-owned vehicles. The
availability of adequate service and supply facilities
throughout the State is directly related to the refining
capacity and distribution organization of the contracting
supplier. It has been found that even some of the 'major'
oil and refining companies have limited and/or no dis-
tribution of refined products in some portions of the
State. Some of the problems involved in purchasing from
independent producers are refinery location and distri-
bution facilities for refined products, a satisfactory
method for handling multiple independent contracts and
credit arrangements between the various contract areas
of the State, refined products of uniform quality and

Honorable William J. Burke, Page 2 (WW-345

dependability. There are differences to be found in petroleum products refined by various producers because of the method of processing and compounding and the chemicals used therefor. This is particularly true of lubricating oil and grease.

"Our questions are as follows:

"(1)  In order to be assured of adequate service for the State's fuel and refined products needs, under the Resolution, can we legally obtain and/or force compliance leading to the issuance of a certificate from refiners certifying that the refined products purchased for consumption by the State are refined from Texas crude?  Would such certificate satisfy the intent of the Resolution?

"(2)  In the event our examination of existing contracts with refiners indicates that they are oil importers but that said refiners are willing to furnish a certificate such as described in (1) above, would the Board of Control be in violation of terms of the Resolution to continue to purchase from refiners with whom we now have contracts?

"(3)  In the event our investigation reveals that the firms with whom we have State contracts are importers, and that they are unwilling to execute a certificate stating the products sold to the State are refined from Texas crude oil, if we attempted to terminate the contracts as directed by the Resolution, could they be legally terminated without affording cause of legal action against the State by present contract holders.

"(4)  In the event the holders of our present contracts for refined products are affiliated with oil importing companies, but refine the products which are sold to the State of Texas from Texas crude oil and so certify to that fact, what is our position with reference to compliance with the Resolution and particularly paragraph 7; paragraph 8?

"(5)  In the event present contracts are terminated and new bids are called for refined products, and upon call for said bids we find that distribution of non-importing refiners' products is 'spotty' and/or limited and that State-owned vehicles operating throughout the State cannot be adequately served by the same and/or other refiner contracts, what course of action is open

to us to obtain supplies of fuel and oil products in those areas where non-importing refiners are not operating or do not have adequate distribution of their refined products?

"(6) What form of statement by bidders should be used? Is such a statement form now available?

"(7) What authority and/or power of enforcement does H.C.R. #17 bestow on the Board of Control with which to effectuate the provisions of the Resolution?

" . . ."

House Concurrent Resolution No. 17 resolves as follows:

"RESOLVED, By the House of Representatives of the State of Texas, the Senate concurring, that the State Board of Control be directed not to accept any bids for oil, gasoline and/or lubricant needs of the State of Texas from any person, firm, partnership, company or corporation which imports any crude oil or products into the United States, or which pur- chases any foreign-produced crude oil or products, or from any individual, firm, partnership, company or corporation which is owned, controlled, or affiliated by stock ownership, or otherwise, with any importer as defined herein; and be it further

"RESOLVED, That the Board of Control be directed to study all contracts now in effect with any individual, firm, partnership, company or corporation which imports or is affiliated with any importer of foreign oil, as defined herein, and make every effort to terminate forthwith such contract or contracts if it is legally possible to do so; and be it further

"RESOLVED, That bidders on oil, gasoline and/or lubricant needs of the state be required to file with the Board of Control a sworn statement attached to their bids to the effect that they are not importers of foreign crude oil or products, or affiliated with such importers, as defined herein."

Under the State Purchasing Act of 1957 (Senate Bill 169, Chapter 304, Acts 55th Legislature, Regular Session, 1957, page 739, codified in Vernon's as Article 664-3, Vernon's Civil Statutes, the Board of Control is required to award

contracts to the bidder submitting the lowest and best bid.

Subdivision (f) of Section 8 provides:

"(f)  Award of Contract.  The Board shall award contracts to the bidder submitting the lowest and best bid.  In determining who is the lowest and best bidder, in addition to price, the Board shall consider:

"(1)  The ability, capacity and skill of the bidder to perform the contract or provide the service required;

"(2)  Whether the bidder can perform the contract or provide the service promptly, or within the time required, without delay or interference;

"(3)  The character, responsibility, integrity, reputation, and experience of the bidder;

"(4)  The quality of performance of previous contracts or services;

"(5)  The previous and existing compliance by the bidder with laws relating to the contract or service;

"(6)  The sufficiency of the financial resources and ability of the bidder to perform the contract or provide the service;

"(7)  The quality, availability and adaptability of the supplies, or contractual services, to the particular use required;

"(8)  The ability of the bidder to provide future maintenance, repair parts, and service for the use of the subject of the contract;

"(9)  The number and scope of conditions attached to the bid."  .

Section 30 of Article III of the Constitution of Texas provides:

"Sec. 30.  No law shall be passed, except by bill, and no bill shall be so amended in its passage through either House, as to change its original purpose."

1621

In view of the provisions of Section 30 of Article III of the Constitution above quoted, a statute can not be amended by a resolution. Humble Oil & Ref. Co. vs State, 104 S.W. 2d 174 (Tex. Civ. App.1936); Terrell Wells Swimming Pool vs Rodriguez, 182 S.W. 2d, 824 (Tex. Civ. App. 1944); Mosheim vs Rollins, 79 S.W. 2d 672 (Tex. Civ. App. 1935, error dismissed).

It is our opinion that House Concurrent Resolution of the First Called Session of the 55th Legislature, 1957, constitutes an attempt to amend the provisions of Subdivision (f) of Section 8 of Chapter 304, Acts 55th Legislature, Regular Session, 1957 in violation of Section 30 of Article III of the Constitution of Texas. Therefore, in answer to your questions, you are advised:

1. The State Board of control is not authorized to require the "issuing of a certificate from refiners certifying that the refined products purchased for consumption by the State are refined from Texas crude."

2. The Board of Control is required to continue the purchase from refiners with whom the State now has contracts in accordance with the terms and conditions of such contracts and is not authroized to abrogate the obligations of the State under existing contracts.

3. In answer to the remaining questions you are advised that the State Board of Control is required to follow the terms and conditions of the State Purchasing Act of 1957 in awarding contracts for the purchase of the State's fuel and refined product needs.


## SUMMARY

The purchase of feul and refined products for the State is governed by the provisions of Chapter 304, Acts 55th Legislature, Regular Session, 1957 (State Purchasing Act of 1957). The provisions of House Concurrent Resolution No. 17 of the First Called Session of the 55th Legislature, 1957, can not amend,

Honorable William J. Burke, Page 6 (WW-345)

alter or repeal any of the provisions
of the State Purchasing Act of 1957
in view of the provisions of Section
30 of Article III of the Constitution
of Texas.

Very truly yours,

WILL WILSON
Attorney General of Texas

By John Reeves
John Reeves
Assistant

JR:mg

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

John H. Minton, Jr.

Marietta Payne

B. H. Timmins, Jr.

Fred Werkinthin

REVIEWED FOR THE ATTORNEY GENERAL

By:  W. V. Geppert